## No. 11,022.

## JOHNSON *v.* ELLIOTT.

Decided December 1, 1924. Rehearing denied January 5, 1925.

Action on insurance policy.   Judgment for plaintiff.

### *Affirmed.*

### On Application for Supersedeas.

1.   APPEAL AND ERROR—*Issues—Waiver.* Error, if any, in submitting to the jury two issues for a single finding, is waived, where the complaining party does not take advantage of his privilege seasonably to object thereto.

2.      *Issues—Harmless Error.* In a controversy over the ownership of certain securities, error, if any, in submitting to the jury two issues for a single finding, held to be without prejudice, where the record discloses that the complaining party was estopped from claiming ownership.

3.      *Equitable Action—Jury.* Error, if any, in improperly submitting to the jury an equitable issue, held harmless where the court finally determined for itself the issues of fact upon which its decision was based.

4.      *Fact Findings.* Fact findings supported by legal, competent, and sufficient evidence, will not be disturbed on review.

5.   ESTOPPEL—*Insurance Companies—Assets.* One who permits promoters of an insurance corporation to represent to the insurance commissioner that securities, claimed by her, are assets of the company, upon which representation a license to do business is issued, will not be heard to say, as against a policy holder who has suffered a loss, that the property belongs, not to the company, but to her.

*Error to the District Court of the City and County of Denver, Hon. Julian H. Moore, Judge.*

Mr. PAUL MOSS, for plaintiff in error.

Messrs. QUAINTANCE & QUAINTANCE, for defendant in error.

*Department Three.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THE Centennial Mutual Insurance Company was incorporated under Division III of Chapter 42, C. L. (Colo.) 1921, p. 836, et seq., relating to mutual insurance, its object apparently being to insure against loss or liability by reason of bodily injury or death. Under this law an insurance company may not issue policies or transact any business of insurance unless and until it has fully complied with the conditions prescribed by the act, and not until the insurance commissioner has by formal license authorized it to do so. Among other conditions precedent to issuance of the license, which the company must have performed, is one requiring it to have at least two hundred bona fide applications for insurance, and that premiums upon each application shall have been collected, the total of which premiums shall be held in cash or securities in which insurance companies are authorized to invest. Under the statute and the prevailing practice the representative of the company must produce to the insurance commissioner these applications and the cash or securities, and upon examination thereof, if the commissioner is satisfied that the provisions of the act have been complied with, he must issue the formal license to the company.

The organizers of this company, or their representative, presented to the state insurance commissioner two hundred applications for insurance representing them to be bona fide applications, and produced the prescribed securities of the value of about $10,000, which they represented to the commissioner as assets and property of the insurance company, and upon the strength of the showing thus made the insurance commissioner issued the license which later was revoked when the commissioner learned that the representations were untrue. About four months after the license was given, and before revocation, F. P. Elliott, plaintiff in this action, applied for, and there was issued to him, an insurance policy of the company on which he had paid the premium. Various other persons made applica-

tions and paid premiums, to whom policies were issued. These policy holders, or some of them, suffered loss or expense by reason of injury by accident and to Elliott were assigned their claims. Elliott, in his own behalf, and as assignee of the other policy holders, brought this action against the insurance company on these policies and recovered a judgment for about $900.00. An execution was issued and placed in the hands of the sheriff. The company had no assets, had ceased to do business and was insolvent. Upon due application a summons in garnishment in aid of the execution was sued out by Elliott and the same was served upon the Guaranty Trust Company of Denver in whose custody these securities, theretofore exhibited to the commissioner and amounting to about $10,000, had been placed by the representative of the insurance company. After the writ of garnishment had been served, and the garnishee had answered admitting that a box had been by such representative put into a safety box in its vaults, the contents of which were not known to it, Miss C. M. Johnson was permitted by the court to intervene, and she did intervene, in the action claiming that these securities in the box belonged to her and not to the insurance company. Plaintiff answered, denying ownership, coupled with a plea of an equitable estoppel. There was a trial before a jury of these issues between Miss Johnson, intervener, and the judgment plaintiff in the action, Elliott, which resulted in a verdict for the plaintiff. On this verdict the court rendered a judgment directing the box to be opened, which was found to contain the securities in question, and the clerk was ordered to deliver to the sheriff one of the bonds for $1,000, to be sold and the proceeds of the sale applied to the satisfaction of the plaintiff's judgment; and, if there was a deficiency, the clerk was authorized to deliver another or other of the bonds to be sold and likewise applied until the full amount of the judgment was satisfied, and the other securities were ordered to be deposited in the registry of the court to await further decision as to their disposition. Miss Johnson, the inter-

vener, has sued out a writ of error to the judgment and asks for a supersedeas, and the parties request that the case be decided on its merits upon this application.

1. The intervener says that prejudicial error resulted from the general verdict in the plaintiff's favor because of the improper submission to the jury for its finding on two issues: One, as to the ownership of the securities; the other, as to an equitable plea of estoppel interposed by the plaintiff. She says this is so because all the evidence was that she was the unquestioned owner of the bonds, and the verdict, therefore, was manifestly against the evidence on that issue; and the finding of the jury, on the issue of equitable estoppel, being in plaintiff's favor, as to which there was a conflict, the entire verdict must be set aside because, being wrong as to one issue, it is wrong as to both.

There are two answers to this assignment: If it was improper to submit to the jury the two issues for a single finding, intervener had, but did not avail herself of, the right and privilege at the time to object thereto. The other answer is that if all the evidence without dispute tended to show ownership of the securities in the intervener, as against the insurance company, as we think it did, such ownership would not avail her as against the equitable estoppel pleaded by the plaintiff, if the estoppel was established. Conceding then, as we think the fact is, that the intervener, as between her and the insurance company, owned these securities, the irregularity, if such it was, of submitting separate issues of fact for one finding was harmless if, as we shall presently show, intervener's inequitable conduct in representing them as the property of the insurance company estops her as against the plaintiff from asserting that ownership; hence, if the jury was wrong in its finding of ownership its finding may be considered as set aside. The other issue introduced an equitable issue for determination by the court, not by a jury. Error, if any, in improperly submitting the equitable issue to the jury is harmless, since the finding would be only advisory, and the record shows that the court itself found

that the equitable estoppel was established by the evidence, and based its finding and decision in favor of the plaintiff solely upon the equitable estoppel which assumed ownership, as against the insurance company, of these securities in the intervener.

2. The evidence is in irreconcilable conflict as to the plea of equitable estoppel. In substance this plea was that the intervener assisted and connived with the insurance company in representing to the state insurance commissioner that two hundred bona fide applications for insurance had been received upon which the full premium for the first year had been paid, and that the bonds and securities, which the intervener, as between her and the insurance company, owns, were the assets and property of the insurance company. Such representations were made for the purpose of obtaining the license for permission of the insurance company to begin the transaction of its business, which the company could not undertake until the license was issued. It is true that the intervener claims that she entrusted these securities to the representative of the insurance company, not for the purpose of having them produced to the insurance commissioner as the assets or property of the insurance company, but for keeping them in a safe place for her benefit until she asked for their return. It may also be true, as the intervener's counsel so vigorously argues, that she was imposed upon or deceived by the officers or agents of the insurance company. There was testimony, however, to the effect that the intervener knew that the insurance company could not enter upon the business of writing insurance until a formal license was issued by the insurance commissioner, and that this license could not be given until at least two hundred bona fide applications for paid insurance had been received by the company, and until the insurance company had satisfied the insurance commissioner that it had bona fide securities of the kind required by the statute to the amount of about $10,000. The next day after the license was given and before the company entered upon its business, she demanded

a return of the securities which the representatives of the company refused.  She knew the company was thereafter doing an insurance business and was writing policies and receiving premiums.  She made efforts at various times subsequently to recover her property but was unable to secure it, but she never made any complaint to the insurance commissioner that she had been defrauded, or that her securities had been used without her consent, and for an improper purpose, until after the plaintiff in the action, who obtained the judgment against the insurance company for losses sustained, and his assignors had taken out insurance policies.

The witnesses, whose testimony was in irreconcilable conflict, were seen by the jury and the trial judge.  The jury are the sole judges of the credibility of witnesses and of the weight and sufficiency of the testimony.  The jury's verdict met with the approval of the trial court.  Under the recognized rule so often enforced in this jurisdiction, we can not interfere with the finding of facts, supported as it is by legal, competent and sufficient evidence.  There is no dispute between the parties that if the intervener did connive or participate with the representatives of the insurance company in producing to the insurance commissioner as the assets of the company these securities, which belonged to her, and if she assisted in the preparation of these straw or fake applications for insurance and falsely represented that the premiums on the applications had been paid, that she would be estopped in equity, as against the creditors and policy holders of the insurance company who suffered losses, to say that the bonds were hers and not the property of the insurance company.  There was testimony, as we have said, that the intervener, with full knowledge that these applications for insurance were not bona fide but were straw or fake applications, and also that her bonds and securities were presented to the insurance commissioner and represented to be the assets of the insurance company, upon the faith of which the insurance commissioner authorized the insurance company to begin

business. If the intervener wås defrauded by the pro-
moters and organizers of this insurance company, it is her
misfortune and to them she must look for redress. These
securities were so pledged as to be, between the policy
holders and the intervener, the property of the company
and for their benefit in case of any loss against which the
policies insured them.

There are some circumstances in the record which indi-
cate that the intervener was deceived and defrauded by
these promoters. There are also circumstances and posi-
tive testimony that she was cognizant of their purpose
and aware that they were intentionally misleading and de-
ceiving the insurance commissioner, and that she was
grossly negligent in not calling the attention of the insur-
ance commissioner to the fraud and deceit being practiced
upon him.

*Golden v. Cervenka,* 278 Ill. 409, 116 N. E. 273, was a
case where the court enforced the equitable principle that
is enforced in the instant case. The Golden Case was not
the same as this in its facts, but we think it is authority for
our conclusion here. In that case the court said that one
who enables a bank to evade the statute requiring the
capital stock and its surplus to be paid in in cash is liable
to the bank's creditors. The Illinois statute did not permit
a bank to begin business until an auditor's certificate was
issued that the bank's capital and surplus had been fully
paid and it was in accordance with the plainest principle
of equity, the court said, that a person who procured such
a certificate to be made could not afterwards be permitted
to deny its truth or the truth of the representations upon
which it was based, as against a subsequent creditor of
the bank by reason of its falsity. So here, where an insur-
ance company is not permitted to begin business until the
state insurance commissioner has issued its license and
that license may not be issued until the insurance company
has received two hundred bona fide applications for insur-
ance on which the premiums for the first year have been
paid, and that an amount equal to the premiums is held

on deposit by the insurance company, one who makes the representation is liable to a policy holder who is injured thereby. That is, where, as here, the intervener, as the court and jury found, represents to the insurance commissioner that bonds and securities which she owns, are the property and assets of the insurance company and thereby enables the insurance company to procure from the insurance commissioner authority to transact business, may not be heard to say, as against a policy holder, who becomes such by relying upon the truth of such representations and suffers loss, that the property belongs, not to the insurance company, but to her.

The jury having found the issues against intervener and no prejudicial error appearing in the instructions of the court or in its rulings at the trial, we must affirm the judgment.

Supersedeas denied and judgment affirmed.

MR. JUSTICE ALLEN and MR. JUSTICE SHEAFOR concur.