No. 14,175.

CROSBY, COUNTY TREASURER *v.* FIRST NATIONAL BANK OF HOLYOKE.

(76 P. [2d] 734)

Decided February 14, 1938. Rehearing denied March 7, 1938.

Messrs. SAUTER & SANDHOUSE, for plaintiff in error.

Messrs. LEWIS & GRANT, Mr. F. W. SANBORN, JR., Mr. IRVING HALE, JR., Mr. RICHARD M. DAVIS, for defendant in error.

*In Department.*

MR. JUSTICE KNOUS delivered the opinion of the court.

UNTIL May 29, 1931, the Citizens State Bank, incorporated under the banking laws of Colorado and operating under the general supervision of the state bank commissioner, and the First National Bank of Holyoke, Colorado, defendant in error here, chartered under the banking laws of the United States, were doing a general bank-

ing business in the town of Holyoke, Colorado. Beginning in the latter part of the year 1930 and extending over the period until May 29, 1931, negotiations were in progress between the two banking institutions looking to the elimination of one or the other from banking operations in said town and to the continued operation of one bank to serve that community. On the date mentioned these efforts culminated in the Citizens State Bank concluding its banking business and the First National Bank continuing as the sole banking house in Holyoke. In the transaction certain of the assets of the Citizens State Bank were transferred to the First National Bank and $60,000 were made available to the liquidating agent of the Citizens State Bank for distribution ratably to the stockholders of that institution and the capital stock of the Citizens State Bank thereby retired. These stockholders, with the money so paid to them, immediately individually purchased stock of the First National Bank to the extent of at least their liquidation proceeds from the Citizens State Bank. Mr. C. E. Paul and Mr. F. C. Fiedler, president and secretary respectively of the Citizens State Bank, were thereupon elected president and secretary of the First National Bank and until the liquidation of the State Bank, continued as such officers of both banks. Soon thereafter the Citizens State Bank in the process of its voluntary liquidation and the dissolution of its corporate existence, surrendered to the state bank commissioner for cancellation the certificate of authority under which it had previously operated. In due course and upon a showing, which we shall discuss, the certificate of authority was cancelled by the bank commissioner.

Before the transfer of the assets of the Citizens State Bank to the First National Bank, and on April 29, 1931, in accordance with sections 285 and 287, chapter 142, C. S. A. '35, the Citizens State Bank made its tax return for the year 1931. In due course the tax on the capital

stock of the Citizens State Bank for that year was fixed by assessment and levy at $1,526.38. At the time the levy was made and certified the Citizens State Bank had ceased to exist and the plaintiff in error as county treasurer of Phillips county, in which the town of Holyoke is situate, brought this action against the First National Bank to recover the tax, alleging that it had assumed all of the liabilities and obligations of the Citizens State Bank at the time of, and in connection with, the transfer of its assets to the First National Bank. The First National Bank by way of answer alleged that the transaction was governed by a written agreement entered into between the parties on May 29, 1931, in which the liabilities of the Citizens State Bank assumed by the First National Bank, were limited to specific items which did not include the 1931 tax on the capital stock of the Citizens State Bank, and denied generally that the First National Bank had assumed the payment of this tax. In his replication the treasurer asserts that by reason of the acts, conduct and representations of the First National Bank in connection with the liquidation and dissolution of the Citizens State Bank, which will hereinafter be mentioned in detail, the First National Bank is estopped to deny the assumption of the tax liability involved and from relying on any contract at variance with certain representations made by it to the state bank commissioner in connection with securing the cancellation of the certificate of authority of the Citizens State Bank.

The trial court, apparently not considering the rule of estoppel, which we consider decisive, denied the treasurer the right to recover, determining that in a strict legal sense no merger of the banks had occurred and, therefore, the liability for debts incident to a merger had not attached to the First National Bank, in view of which the transaction was controlled by the agreement of May 29 under which this tax was not assumed.

 The voluntary liquidating of a state bank is regulated by section 62, chapter 18, C. S. A. '35, which provides: "Any bank, with the concurrence of the holders of at least two-thirds of its capital stock, expressed at a meeting of its stockholders, may voluntarily liquidate after all its debts have been fully paid or provided for by depositing with the state bank commissioner funds to meet the same when presented for payment. A statement disclosing such facts, verified by the president or vice president and cashier or secretary of such bank, shall be filed with the state bank commissioner. If said state bank commissioner is satisfied with the truth of such statement, he shall issue a certificate cancelling the authority of said bank to do business, and it shall be no longer subject to the provisions of this article. * * *."

For the purpose of complying with this provision of the statute and in order to effect liquidation and dissolution of the Citizens State Bank in accordance therewith, under date of June 2, 1931, there was transmitted to the state bank commissioner, with other pertinent papers, the following writings:

(Ex. K.)

"We, C. E. Paul, President and F. G. Fiedler, Secretary of The Citizens State Bank of Holyoke, Colorado, do hereby certify that under date of June 1st, 1931, all of the assets of The Citizens State Bank of Holyoke, as of the close of business May 29, 1931, were transferred to The First National Bank of Holyoke, Colorado.

"The First National Bank of Holyoke assumes all liability of record under date of transfer of assets including all obligations, judgments or litigations pending, which might run as a liability of the said The Citizens State Bank of Holyoke.

"In consideration of the above statements, we are, herewith enclosing, Certificate of Authority No. 375 issued by the State Banking Department of the State of

Colorado, requesting cancellation of the same at your convenience.

(Corporate Seal) C. E. Paul
 President
 F. G. Fiedler
 Secretary

''Subscribed and sworn to before me this 2nd day of June, 1931

''My Commission expires Aug. 19, 1934

James W. O'Neal
Notary Public.''

(Ex. L.)

''Holyoke, Colorado.
May 1931
June 2, 1931

''Grant McFerson,
State Bank Commissioner,
Denver, Colorado.

''Dear Sir:

''You are hereby advised that under date of June 1, 1931, The First National Bank of Holyoke took over all of the assets and assumed all of the liabilities of The Citizens State Bank of Holyoke, the same being effected by a mutual agreement and copy of contract herewith attached, said action being duly ratified by the Board of Directors respectively of the above named banking institutions.

''The creditors of The Citizens State Bank of Holyoke are further protected by the enclosed bond in amount of Fifty Thousand Dollars ($50,000.00), duly executed by the President and Secretary and signed by the several directors of The First National Bank of Holyoke, said bond running to the people of the State of Colorado, and placed in the hands of the State Bank Commissioner.

C. E. Paul
President
F. G. Fiedler
Secretary.''

The bond referred to (Exhibit J), executed by the First National Bank of Holyoke, Colorado, as principal, and signed by the directors of the institution as sureties, provides:

"The condition of the above obligation is such, That

"Whereas, The principal above named is about to take over the assets of said The Citizens State Bank of Holyoke and to assume its liabilities, and in practical effect to consummate a consolidation of the two institutions.

"Now, therefore, If the principal above named shall take over said assets, giving credit therefor or paying for the same in conformity with the understanding and contract between said principal and said The Citizens State Bank of Holyoke, and shall satisfactorily assume, adjust or pay the liabilities of said The Citizens State Bank of Holyoke in conformity with said understanding and contract, then this obligation shall become null and void, otherwise to be and remain in full force and effect."

It will be noted that Exhibit K is signed by C. E. Paul and F. G. Fiedler as president and secretary respectively of the Citizens State Bank; that Exhibit L is signed by the same gentlemen as president and secretary of the First National Bank; and that the bond of the First National Bank is executed by them in the same capacity. It will be further observed that in Exhibit L, and in the bond Exhibit J, reference is made to a contract, and the First National Bank argues that this contract must of necessity have been the agreement of May 29, 1931, which, however, is silent as to the 1931 tax, and on this basis asserts that these exhibits do not create an assumption of liability of a tax item by the First National Bank. This argument is without merit since the record is entirely void of any proof that the contract of May 29—relied upon by the First National Bank—was ever transmitted to the state bank commissioner, attached to Exhibit L or otherwise, and it discloses no effort by the First National Bank to establish such cir-

cumstance. Likewise, the letter of transmittal with which Exhibits J, K and L were sent with other papers to the bank commissioner, is silent as to any contract being inclosed. Further, had a contract under which the First National Bank proposed to assume only a portion of the liabilities of the Citizens State Bank been exhibited to the bank commissioner, in the absence of a deposit of funds to pay such debts, which was not made, he would have been without right, under the statute, to cancel the certificate of authority of the Citizens State Bank. We believe it apparent that these representations of the Citizens State Bank and the First National Bank were designed and intended to satisfy the bank commissioner that all of the debts and liabilities of the Citizens State Bank had been liquidated or assumed by the First National Bank and were made in pursuance of the statute to secure the cancellation of the certificate of authority of the Citizens State Bank. The solemn statements of the First National Bank contained in Exhibits J and L, no contract varying or qualifying such statements being attached or submitted, would lead any person to believe that it had assumed all of the liabilities of the Citizens State Bank existing at the time of the transfer of the latter's assets to the former, and the mentioned contract would be deemed to so provide. The bank commissioner undoubtedly considered these statements as having that effect and purpose and relied upon their truth in cancelling the certificate. Under such circumstances and regardless of what may have been the actual contract between the banks, equity will not permit the First National Bank to now deny the assumption of this tax liability. The First National Bank seeks to avoid the effect of this estoppel by arguing that there is no evidence that any of these representations were made to the treasurer personally to his prejudice, by reason of which it is said he cannot rely upon this equitable principle. This rule does not apply where the representation is so general in its terms, or made under such cir-

cumstances, as to indicate that it was intended to reach and influence third persons or the community at large, whereby the estoppel is carried sufficiently far to protect every one who has innocently acted upon or been governed by it. 21 C. J., p. 1181, §183. In the present case the representations were formally made, in alleged conformity with a statute, to a public official charged with supervision of state banks with the view of terminating the existence of such a bank and thereby legally obliterating the corporate being and capital stock primarily liable for the tax here involved. The statements were filed in the very office where any of the public interested in the status of such an institution would make inquiry. It is difficult to conceive a situation under which this rule of estoppel would be more applicable than here. This principle was restated and adhered to by this court in the case of *Johnson v. Elliott,* 76 Colo. 358, 231 Pac. 675, where it was held that one who permits promoters of an insurance corporation to represent to the insurance commissioner that securities, claimed by her, are assets of the company, upon which representation a license was issued to it, will not be heard to say, as against a policy holder, that the property belongs, not to the company, but to her.

The case of *Golden v. Cervenka,* 278 Ill. 409, 116 N. E. 273, cited with approval in *Johnson v. Elliott, supra,* is, in some of its aspects, similar to the case at bar. There estoppel was invoked against a trust company which gratuitously permitted an individual interested in changing a national bank into a state bank, to display to the state auditor $1,250,000 of the trust company's money as being funds of the inceptive state bank, thereby inducing the state auditor to issue to the state bank a certificate authorizing it to commence business, and the trust company was held liable to the extent of such sum to the creditors of the state bank upon its insolvency.

 Under the allegations of the complaint the duty of the First National Bank to pay the tax involved

arose from its assumption, either voluntarily or by operation of law, of its liability, and no attempt is made in this proceeding to impose or enforce a lien for the tax on the specific property assessed; consequently, and contrary to the contention of the First National Bank, no question arises as to whether the tax lien contemplated by section 4, chapter 142, C. S. A. '35, had attached to the stock of the Citizens State Bank as of the date of the involved transaction. There can be no doubt that the capital stock of the Citizens State Bank was subject to assessment for the year 1931 on the basis of its value as of April 1st of that year—sections 72 and 287, chapter 142, supra—and that as agent for its stockholders said bank would be obligated for the payment of the tax thereon when levied. Section 285, supra. When one by his voluntary act or by operation of law assumes or has imposed upon him liability to pay such tax, he cannot escape the obligation on the theory that when the assumption was made or the duty legally imposed, the amount of the tax had not been ascertained.

Accordingly the judgment is reversed and the cause remanded with directions to enter judgment in favor of the plaintiff in error in accordance with the prayer of his complaint.

MR. CHIEF JUSTICE BURKE, MR. JUSTICE BOUCK and MR. JUSTICE YOUNG concur.