RUBBO, APPELLEE, *v.* THE HUGHES PROVISION CO., APPELLANT.

(Decided December 9, 1940.)

*Mr. David Shermer,* for appellee.
*Mr. Comus M. Beard,* for appellant.

CARTER, J. The action below was one for damages.

Plaintiff, appellee herein, in her petition alleges that defendant, appellant herein, is a corporation, and owns, operates, maintains and controls a special food market at 118 East Federal street, Youngstown, Ohio, selling meat, fish, poultry, groceries and dairy products; that on the twenty-ninth day of November 1938, at about four o'clock in the afternoon, plaintiff's husband went to defendant's store, purchased meat at the meat counter, groceries at the grocery counter, bread at the bread counter and rabbits at the fish department, and relied on the judgment and skill of the company that the various articles of food so sold to her husband were free from any injurious substance and were fit for human handling and consumption; that her husband purchased of the company three rabbits which were poisoned and putrified, unfit for human handling and injurious to the life and health of persons handling the same; that plaintiff did the things necessary in the preparation of the rabbits for the purpose of cooking them, and as a result she became ill and suffered excruciating pains all over her body; that in the handling of the rabbits the blood of her body had become poisoned; that she contracted tula-remia; that she was confined by reason thereof to the hospital for approximately two weeks; that the glands in the left axilla were swollen to such an extent that it was necessary to remove 20 c.c. of yellow pus from them; that she suffered a severe shock to her nervous system; that she was confined to her home as a semi-invalid for about six months; that the company had knowledge, or in the exercise of ordinary care could have discovered by its experience in the handling and sale of rabbits that these rabbits were poisoned and putrified; that her injuries were brought about directly and proximately through the defendant's negligence and carelessness and unlawfulness in selling to plain-

tiff's husband the rabbits that were poisoned and putrified, in failing and neglecting to make an inspection of the rabbits before making the sale, and in failing and neglecting to warn plaintiff's husband, upon the sale of the rabbits, of the existence of danger in the handling of same in preparation for consumption.

An answer was filed by defendant in which it admitted that it was a corporation engaged in the business of selling meat, poultry, groceries and dairy products; specifically denied that it sold any rabbits on November 29, 1938; and specifically denied that it sold any rabbits at all during the year 1938, or for many years prior thereto. There was then a general denial of all of the allegations of the plaintiff's petition except those admitted to be true, and as a second defense it was averred that the allegations of the plaintiff's petition were not sufficient to constitute a cause of action.

To this answer a reply was filed by plaintiff in which it was alleged that the defendant operated a public market having therein several rented departments, which market however was at all times under the direction, control, supervision and maintenance of defendant company; that one of these rented departments was known as the fish department; that the rabbits were purchased at the fish department; that the company by its conduct caused or permitted it to appear that one of its tenants, R. D. Campbell, was its agent; that plaintiff was without knowledge of the arrangement between defendant and its tenants but relied wholly upon the company's holding itself out as the sole owner and seller of all merchandise in its market and relied not only on the judgment and skill of the company, but also on the fact that its merchandise was free from any injurious substance.

The issues thus joined, the cause came on for trial to the court and jury resulting in a verdict in favor of plaintiff in the amount of two thousand dollars,

Appeal is prosecuted to this court to reverse the judgment entered on this verdict, and for final judgment for defendant. The verdict was signed by nine members only.

The record discloses the following: The Hughes Provision Company owns, operates and maintains a large market house in Youngstown and rents a stall therein to R. D. Campbell. Plaintiff's husband, accompanied by his daughter, on the twenty-ninth day of November 1938 went to defendant's market and made separate purchases which included the rabbits in question. On his return home the package containing the rabbits was turned over to plaintiff by her husband and she proceeded to prepare the rabbits for cooking. She subsequently became ill and apparently contracted tularemia.

It appears from the record that The Hughes Provision Company, a short time before the purchase of the rabbits in question, had inserted an advertisement in the Youngstown Vindicator, a leading newspaper published in Mahoning county. Among other articles advertised were turkeys, ducks, geese, chickens, fish, *rabbits,* oysters, butter and eggs, and many other articles unnecessary to mention. There also appears as an exhibit in the case another advertisement which appeared at about the same time. In one portion of this advertisement is found the following, "Campbell Fish-Oysters-*Rabbits.*" It is the claim of the husband and wife, and testified to by them, that these advertisements had been discovered by the daughter who read the same to them. The husband claims that in the purchase of these rabbits he supposed he was purchasing them from The Hughes Provision Company, and that the company always sold him good meats and he relied upon that fact in the purchase of the rabbits.

A Dr. Hathhorn testified that he was the Rubbo's family physician; that he was called for the first time on December 7, 1938, which was about a week after the

purchase of the rabbits, and again about a week later; that after hearing the history from plaintiff he extracted some of her blood and sent it to Columbus for a test; that the reports were positive for tularemia; that he then called in another doctor, Dr. Rosenblum, an expert on the subject; that plaintiff was removed to the hospital, and was thereafter treated solely by Dr. Rosenblum; and that when she was removed to her home Dr. Hathhorn continued treating her until August 16, 1939, requiring some forty-one visits to the home or to his office.

Dr. Rosenblum testified that he was an expert in the treating of tularemia; that he also extracted blood from plaintiff and sent it to Dr. Fouchet in Cincinnati, a recognized expert on tularemia, and that she was treated for this ailment.

Defendant's evidence is to the effect that defendant had not sold rabbits for a period of ten years, and did not sell the rabbits in question; and that it rented out counter space in the store to a man by the name of Ralph Campbell, who operates the fish counter and who pays the company a flat weekly rental of $25 for the use of this space.

The evidence further discloses that there was a large sign back of Campbell's counter at the time of the purchase, reading, *"Campbell's Fish Market,"* and that Campbell maintained and operated a separate cash register for his own transactions.

The chief health inspector of the city of Youngstown, who has charge of issuing retail meat dealer's licenses, testified that he had issued a separate license to Ralph Campbell and to The Hughes Provision Company to sell meat.

The following errors are urged by defendant: First, that the court erred in failing to sustain defendant's demurrer to the opening statement of counsel for plaintiff, in failing to direct a verdict for defendant at the close of plaintiff's case, and in failing to direct

a verdict for defendant at the conclusion of all the evidence; second, that the court committed prejudicial error in the trial of the case by refusing defendant's request to charge before argument, and by refusing to give defendant's charge on the law of estoppel after the specific request of defendant; third, that there was error by reason of a misstatement of the law applicable to the facts of the case at bar, not only by counsel for plaintiff during the closing argument, but by the trial court, over the objection and exception of defendant, charging that Section 12760, General Code, was the applicable statute; and, fourth, that the verdict and judgment thereon are against the manifest weight of the evidence.

In support of defendant's first assignment of error it is urged that defendant had not sold rabbits for ten years, and did not sell the rabbits in question since they were purchased from Ralph Campbell. The evidence clearly discloses that Campbell did operate a separate stall in this market house, and had the parties had knowledge of this fact and known that these rabbits were being sold by Campbell, and not by the provision company, then certainly the company would not be liable to plaintiff.

We might suggest at this point that Campbell's sign carried no notice of the sale of rabbits, but designated a fish stand.

We are of opinion that, when the provision company advertised the sale of rabbits in its place of business, prospective purchasers going to the company's place of business had a right to assume, in the absence of knowledge to the contrary, that the company was selling these rabbits through its employees. It was not the duty of a purchaser to inquire of each seller of merchandise as to whether a particular article was the property of the company or the property of someone else.

Section 12760, General Code, provides:

"Whoever sells, offers for sale or has in possession with intent to sell, diseased, corrupted, adulterated or unwholesome provisions without making the condition thereof known to the buyer, shall be fined not more than fifty dollars or imprisoned twenty days, or both."

No information was available that Campbell was an independent dealer, except the sign, "Campbell's Fish Market," and one might, and we think properly, assume under the advertisement that the rabbits were property of the company and being sold for it by Campbell. Had the sign carried "Campbell's Fish and Meat Market," or "Campbell's Fish and Rabbit Market," this would have been some notice to the public that Campbell was selling rabbits on his own. Such was not the case.

It is urged, inasmuch as the action must be based on estoppel or agency by estoppel, that plaintiff not being the purchaser of the rabbits in question can not avail herself of the doctrine of agency by estoppel, for estoppel, as such, applies only to the purchaser and none other, and that she did not rely upon the appearance of an agency relationship and was a stranger to the transaction.

We think the company under these circumstances is estopped from denying it was selling rabbits and from asserting that it had not sold them for ten years. Whether agency by estoppel existed under the circumstances was a jury question. The wife, plaintiff herein, at least had knowledge of this advertisement and later learned of the fact that the rabbits were purchased from this store. As a result of cleaning the rabbits she contracted tularemia, and we are of opinion that a cause of action accrued to her even though she did not purchase the rabbits in person. In 21 Corpus Juris, 1181, Section 183, under the subject of estoppel, the author states:

"However, when a representation is so general in its terms, or made under such circumstances, as to indi-

cate that it was intended to reach and influence third persons or the community at large, the estoppel may be carried sufficiently far to protect every one who shall have innocently acted upon or been governed by it."

In *Crosby* v. *First National Bank of Holyoke*, 102 Colo., 43, 76 P. (2d), 734, the court said that the effect of an estoppel can not be avoided on the ground that representations creating the estoppel were not made personally to the individual relying thereon to his prejudice, if the representation is so general in its terms or made under such circumstances as to indicate that it was intended to reach or influence third persons or the community at large.

The doctrine of apparent authority and estoppel are not dissimilar in their application by the courts. 2 American Jurisprudence, 86, Section 104.

In 2 Corpus Juris Secundum, 1050, Section 23, subsection G, agency by estoppel is defined as follows:

"An implied agency is an actual agency as much as if it were created by express words, and is a fact to be shown or ascertained by inferences and deductions from other facts for which the principal is responsible, while agency by estoppel should strictly be limited to those cases where the authority is not real but apparent."

In 2 Corpus Juris Secundum, 1063, Section 29:

"One who knows that another is acting as his agent or permitted another to appear as his agent, to the injury of third persons who have dealt with the apparent agent as such in good faith and in the exercise of reasonable prudence, is estopped to deny the agency.

"Frequently it happens that, by way of estoppel, an agency is regarded as existing between two persons as to a third person, although as between the persons charged with the consequences of the relation it. does not in fact exist, and they have stipulated between them that it should not exist. While, as shown in

Section 23, an agency by estoppel is distinguishable from an implied agency, for most practical purposes it is of little importance whether liability is sought to be imposed because of implied authority or apparent authority, but if a liability is enforceable because of an apparent agency it is only on the principle of estoppel, and it is more strictly accurate to say that liability arises for the acts of such a so-called agent, not because there is any agency, but because the principal will not be permitted to deny it.''

Many cases have been cited by defendant to the effect that agency by estoppel applies only to parties and privies and does not extend to strangers to transactions, and that it is applicable only where there has been some reliance by third persons upon the appearance of a principal and agent, or master and servant relationship. Many cases, however, not directly in point, have been cited by plaintiff to the effect that defendant is liable in cases such as the one at bar. However in many of these cited cases the action was prosecuted by the party who made the purchase or who went to have certain work performed under similar advertisements, and not such a situation as here presented. In the case of *Portage Markets Co.* v. *George,* 111 Ohio St., 775, 146 N. E., 283, the second paragraph of the syllabus is as follows:

''The violation of the pure food laws of this state by the sale of unwholesome meat is negligence *per se,* and may be the basis of recovery for damages by the user of said unwholesome meat, who suffers injury proximately resulting therefrom, provided the user is not himself guilty of negligence in the care, preparation, cooking, or in any other manner which contributes directly to his injury. (*Allen* v. *Marvin, Admr.,* 64 Ohio St., 608, 61 N. E., 1139, 46 W. L. B., 208, and *Schell* v. *DuBois, Admr.,* 94 Ohio St., 93, 113 N. E., 664, approved and followed.)''

That action was brought by the son, the mother having purchased the meat.

As further bearing on this question we cite the cases of *Fields, Inc.,* v. *Evans,* 36 Ohio App., 153, 172 N. E., 702; *Drock* v. *Great Atlantic & Pacific Tea Co.,* 61 Ohio App., 291, 22 N. E. (2d), 547; *Great Atlantic & Pacific Tea Co.* v. *Hughes,* 131 Ohio St., 501, 3 N. E. (2d), 415; *Troietto* v. *G. H. Hammond Co.,* 110 F. (2d), 135; *Manning* v. *Leavitt Co.,* 90 N. H., 167, 5 A. (2d), 667.

Under these various holdings we are inclined to the view that the wife under all the circumstances in the case could properly maintain this action, and that the court was not in error in refusing to direct a verdict for the defendant at the close of plaintiff's case, or at the conclusion of all of the evidence, or upon the opening statements of counsel; nor is the verdict against the manifest weight of the evidence.

The next error urged is that the trial court refused to give defendant's requested charges before argument. Request number one is as follows:

"The court says to you as a matter of law that the mere fact that he charges you upon the measure of damages is not to be taken by you as any indication whatsoever on the part of the court that the plaintiff is entitled to recover."

This is not a statement of any substantive law applicable to the issues. In other words, it is no part of the law applicable. It is merely an admonition given by the court. Section 11420-1 (5), General Code, provides that when the evidence is concluded either party may present written instructions to the court on matters of law. This statute is mandatory. However, as above indicated, the request was not on matters of law applicable to the issues. The court under this statute was not required to give this admonition. It was a matter within the court's discretion.

In regard to the conclusion heretofore reached and

the cases heretofore cited, knowledge of the seller of unwholesome food, under the provisions of Section 12760, General Code, would not be a condition precedent to paintiff's right of action. For these reasons the court was not in error in refusing to charge defendant's request number three, nor was the court in error in refusing to give defendant's request number four. As to the court charging the provisions of Section 12760, General Code, we think this section was applicable. There was no error in the court's charging this section.

As to the request to charge after argument, we have examined the same with care and also read with care the charge of the court. We find that a portion of this request by defendant was erroneous, and such as was not erroneous was covered substantially by the court in its general charge.

It is urged that counsel for plaintiff misstated the law applicable to the facts in the case during his closing argument and that the trial court, over the objection and exception of defendant, also misstated the law. Counsel for plaintiff made some statement as to what he considered the law was in the case. Objection was made by counsel for defendant. Thereupon the court announced the law applicable, which we think was a correct statement of the legal principle involved. While it is somewhat out of the ordinary for the court to charge a principle of law in the midst of argument, nevertheless we do not think a case should be reversed on that ground alone if the law given by the court is the law applicable to the issues. The court said to the jury, at this point in argument, that Section 12760, General Code, "is for the protection of persons and members of the family, or guests of the buyer who may sustain injuries by reason of eating, or by reason of handling," and that if the husband or a member of the family or a guest is injured by handling or eating unwholesome food, then, by virtue of Section 12760,

General Code, the person so injured has a cause of action against the seller.

The court also charged that a violation of this Section was negligence *per se.* Such is a correct statement of the law.

After reading the record in this case, examining the briefs and examining many authorities, we have reached the conclusion that no prejudicial error intervened in the trial of this case and that the judgment of the lower court should be and hereby is affirmed.

*Judgment affirmed.*

PHILLIPS, J., concurs.

NICHOLS, P. J., concurs in judgment.