OPINION
{¶ 1} Rick E. Calhoun, defendant-appellant, appeals from a judgment of the Franklin County Court of Common Pleas granting summary judgment to Bobb Chevrolet ("Bobb"), plaintiff-appellee. Bobb has also filed a motion to strike the brief filed by Sue Calhoun, defendant-appellee.
 {¶ 2} Sometime in 1996, Rick and his then wife Sue were each looking for vehicles to replace their old vehicles. They eventually purchased a van from Bobb. Rick and Sue also had discussions with a salesperson at Bobb about purchasing or leasing another vehicle. At the initial meeting at Bobb, Rick and Sue completed an application with Fifth Third Bank ("Fifth Third") to be pre-approved for a loan. In approximately October 1996, Sue returned to Bobb by herself and ordered a 1997 Suburban to lease. Sue again returned to Bobb on March 15, 1997, and signed both her name and Rick's name to lease and loan documents from Bank One, as well as other documents. Rick and Sue separated in late 1998, and filed for divorce. In early 2001, Sue stopped paying Bank One. Bank One then notified Rick that he was on the lease for the vehicle and responsible for the payments. After Rick told Bank One that his name was forged, Bank One terminated the lease.
 {¶ 3} On July 30, 2001, Bobb filed an action against Sue. Bobb later amended the complaint to include Rick as a defendant. On October 24, 2002, Bobb filed a motion for summary judgment, claiming that Rick either authorized Sue to sign the lease in his name or ratified and approved such signature by accepting the benefits of the lease. On February 4, 2003, Rick and Sue entered into an agreed judgment entry divorce decree in the domestic relations court. In the decree, Sue agreed to pay the debt to Bobb and hold Rick harmless thereon. On March 28, 2003, the trial court in the present case issued a decision granting in part Bobb's motion for summary judgment. In that decision, the trial court referred to the divorce decree and found there was no genuine issue of material fact that Sue was responsible for the debt owed to Bobb and Bobb was entitled to judgment as a matter of law. The court directed Bobb to prepare the judgment entry. Rick did not agree with the language of the proposed entry and submitted his own proposed entry to the trial court. On July 22, 2003, the court entered judgment against both Rick and Sue. Rick appeals the trial court's judgment, asserting the following assignment of error:
The trial court erred in granting summary judgment to plaintiff when there were disputed issues of material facts which needed to be determined by the jury.
 {¶ 4} Rick argues in his assignment of error that the trial court erred in granting summary judgment to Bobb when there were disputed issues of material fact. Pursuant to Civ.R. 56(C), it is appropriate for a trial court to grant summary judgment when: "(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Templev. Wean United, Inc. (1977),50 Ohio St.2d 317, 327. To succeed on a summary judgment motion, the movant bears the initial burden of demonstrating that there are no genuine issues of material fact concerning an essential element of the opponent's case. Dresher v. Burt (1996),75 Ohio St.3d 280, 292. If the movant satisfies this burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Id., at 293, quoting Civ.R. 56(E). An appellate court will review summary judgment de novo.Helton v. Scioto Cty. Bd. of Commrs. (1997),123 Ohio App.3d 158, 162. Like the trial court, the appellate court must view the facts in the light most favorable to the non-moving party. Viock v. Stowe-Woodward Co. (1983), 13 Ohio App.3d 7,12. Any doubt must be resolved in favor of the non-moving party. Id.
 {¶ 5} In the trial court's March 31, 2003 decision, the trial court never found that Rick authorized or ratified any of the lease documents and never rendered judgment against Rick. The trial court's decision indicated only that there was no genuine issue of material fact that Sue was responsible for the debt owed to Bobb and that she agreed to hold Rick harmless, relying upon the orders in the divorce decree. Despite the lack of specific findings or any explanation in the decision, the entry signed by the trial court on July 22, 2003 entered judgment against both defendants, without further explanation, while purporting to "adopt" the terms of the divorce decree regarding the debt.
 {¶ 6} In Bobb's motion for summary judgment, it argues that Rick cannot evade his liability on the lease agreement because Rick: (1) authorized Sue to sign the documents for leasing the 1997 Suburban in his name; (2) talked with Tom Spires, a salesperson with Bobb, about leasing a 1997 Suburban; (3) signed the original financing documents for Fifth Third; (4) once applied for license plates for the vehicle; (5) acknowledged to the local police department that the 1997 Suburban was his vehicle; (6) made lease payments from a joint checking account with Sue; and (7) drove the vehicle and enjoyed its benefits.
 {¶ 7} In its motion for summary judgment, Bobb relies upon the agency principle to contend Sue was acting on authority of Rick in executing the documents, citing Bretzfelder v. Demaree
(1921), 102 Ohio St. 105. It is true that a wife's agency on behalf of her husband is recognized by Ohio law. Id., at 112-113. However, no presumption of agency between a husband and wife arises based merely upon their marital relationship. McSweeneyv. Jackson (1996), 117 Ohio App.3d 623, 630; Sowers v.Birkhead (1958), 108 Ohio App. 507, 512.
 {¶ 8} An agency relationship may be established under several theories. Actual agency occurs where there is a consensual relationship between the agent and principal. Funk v. Hancock
(1985), 26 Ohio App.3d 107, 110. Agency relationships are also established through apparent agency or agency by estoppel.Agosto v. Leisure World Travel (1973), 36 Ohio App.2d 213,216-217. An agency relationship may also be established by the principal's ratification of the unauthorized acts of another.Eske Properties, Inc. v. Sucher, Montgomery App. No. 19840,2003-Ohio-6520, at ¶ 97. The existence of an agency relationship is a question of fact, rather than one of law. McSweeney,
supra, at 631. If any conflicting evidence of an agency relationship between Rick and Sue was presented, the trial court should have denied Bobb's motion, which sought to resolve the issue as a matter of law. Although Bobb does not specifically present them as such, its arguments potentially raise all three types of agency discussed above.
 {¶ 9} Bobb first contends that Rick authorized Sue to sign the lease documents, which raises the issue of actual agency. Actual agency occurs where there is a consensual relationship between the agent and principal. Funk, supra, at 110. Such actual agency may be informally created and the assent of the parties thereto may be either express or implied. Damon'sMissouri, Inc. v. Davis (1992), 63 Ohio St.3d 605, 608.
 {¶ 10} Bobb argues in its motion for summary judgment that Rick told Sue to sign his name to the documents for leasing the 1997 Suburban and claims Sue was executing a specific order from Rick. These arguments allege an actual, express agency. In interrogatories propounded upon Sue, she stated that Rick knew she signed his name to the lease documents, and he was agreeable that she leased the vehicle. She also said in her deposition that she talked to Rick about her leasing a Suburban, and he had "no problem" with it. She stated that, on the morning she executed the agreements, Rick told her to sign the documents for him. However, Rick averred in his affidavit that Sue never asked him if he would agree to be obligated in any way for the lease of the Suburban, and he would have never agreed to lease such an expensive vehicle. He stated that Sue forged his name without his approval or consent on the lease, the Bank One application, the odometer disclosures for the Suburban and her trade-in, the Bank One balance waiver, and the vehicle receipt. Rick averred that he did not know his name had been forged on any of the lease or loan documents until Bank One contacted him after Sue defaulted. At that time, he immediately told Bank One that he never agreed to the lease and did not sign any documents. Viewing the evidence most strongly in favor of Rick, Rick's averments set forth specific facts that raise a genuine issue of material fact for trial as to whether Rick expressly authorized Sue to sign the lease documents.
 {¶ 11} Bobb further argues that Rick's signing of the Fifth Third documents authorized Sue to execute the Bank One documents and sign Rick's name. This argument raises an issue of actual, implied agency. Actual agency may be implied from the words and conduct of the parties and the particular circumstances of the particular case. Bonn, Luscher, Padden Wilkens v. Haggerty
(Feb. 24, 2000), Cuyahoga App. No. 75043, citing Canyon StateCanners, Inc. v. Hooks (Ariz. 1952), 74 Ariz. 70. An implied agency must be based on facts for which the principal is responsible and be such as to imply an intention to create an agency, and the implication must arise from a natural and reasonable, and not from a forced, strained or distorted, construction of such facts. Id. Further, an implied agency exists by reason of actual authority given implicitly by the principal to the agent and does not depend upon what a third party may believe to be the agency relationship. Rubbo v. Hughes ProvisionCo. (1940), 67 Ohio App. 123.
 {¶ 12} In the present case, Spires averred that the Fifth Third documents were executed in anticipation of leasing the 1997 Suburban. However, Rick stated in his affidavit that he completed the pre-approval with Fifth Third only in anticipation of buying a vehicle with monthly payments in the range of $300, not a vehicle with a $500 monthly payment, such as the Suburban. Rick also pointed out that the Fifth Third application specifically indicated that it could only be used in association with that bank and would be confidential, and, therefore, he could not have intended his completion of the Fifth Third application to grant his wife authority to sign his name to any other application. Given this conflicting evidence and testimony, reasonable minds could have come to more than one conclusion. Thus, the issue of whether Rick's signing the Fifth Third documents actually authorized, by implication, Sue to sign Rick's name on the Bank One documents was inappropriate for summary judgment.
 {¶ 13} Bobb also contends that both Rick and Sue talked with Spires about leasing a 1997 Suburban, and, thus, it was reasonable for Bobb to believe Sue could act on Rick's behalf with regard to her later purchase of the same vehicle. This argument raises an apparent agency issue. In order to establish an agency relationship based on apparent authority, the evidence must affirmatively show: (1) the alleged principal held out the alleged agent to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority; and (2) the person dealing with the agent knew of the facts and, acting in good faith, had reason to believe, and did believe, that the agent possessed the necessary authority. Master Consolidated Corp. v. BancOhio Natl.Bank (1991), 61 Ohio St.3d 570, at syllabus. The authority of an agent is determined by the acts of the principal, not the acts of the agent. Id., at 576. However, an apparent agency relationship can arise where an agent is shown to have authority because the principal has permitted and approved his prior similar acts.Levin v. Nielsen (1973), 37 Ohio App.2d 29, 32. Where third persons rely in good faith on the agent's apparent authority, the principal is bound by the agent's acts falling within the scope of that authority. S-S-C Co. v. Hobby Center, Inc. (Dec. 4, 1992), Lucas App. L-92-049.
 {¶ 14} In the present case, Spires averred in his affidavit that Rick and Sue talked with him about leasing and financing a 1997 Suburban. Sue stated in her interrogatories that she and Rick talked to Spires about leasing the 1997 Suburban. However, Rick averred that, while he and Sue were at Bobb, they looked at cars in the $15,000-$20,000 range but never discussed Suburbans or other vehicles in the price range of $38,000. In Sue's deposition, she also admitted she did not know whether Rick was ever present when talking to Spires about leasing the Suburban. Further, in his deposition, Spires never actually testified that he talked to Rick about a Suburban, and he said he did not remember who was present when the vehicle was ordered. These conflicting versions of the facts raise questions of credibility and weight of the evidence, which are inappropriate for determination upon summary application. Thus, there remain issues of material fact as to whether Rick and Sue both spoke with Spires about leasing a 1997 Suburban and, if so, whether such was sufficient to allow Spires to reasonably rely upon Sue's apparent authority.
 {¶ 15} Bobb also argues that Rick's subsequent actions ratified his wife's actions. A principal ratifies the unauthorized act of the agent only if the principal, with full knowledge of the facts of the transaction, conducts himself or herself in a way which manifests the intention to approve an earlier act performed by the agent that did not bind the principal. Bailey v. Midwestern Ent., Inc. (1995),103 Ohio App.3d 181, 185. Such conduct by the principal can be the failure to repudiate the transaction under circumstances where the principal would naturally be expected to assert his position.Developers Three v. Nationwide Ins. Co. (Jan. 15, 1985), Franklin App. No. 83AP-476.
 {¶ 16} Bobb first asserts Rick's ratification was evinced by his application for license plates for the Suburban. However, as stated above, there was conflicting evidence and testimony as to whether Rick had full knowledge of the facts of the underlying transaction regarding the lease and other documents. If he did not have knowledge, he could not have ratified the acts of Sue. See Bailey, supra, at 185. In addition, Rick averred that, although he did renew the plates for Sue on one occasion, he did so only because Sue was unable to do it, and he signed the document "AIF," attorney in fact. We note that there is a document in the record prepared by Bank One giving Rick limited power of attorney. Although it is unclear how Rick obtained the limited power of attorney from Bank One, or what his understanding of the power of attorney was, his designation of "AIF" after his signature could raise, at the very least, a question of fact as to whether he believed he was acting in a representative capacity for some other party and not on his own behalf in any respect.
 {¶ 17} Bobb also asserts that Rick ratified his wife's actions by acknowledging in a police report that the 1997 Suburban was his vehicle. However, our own review of the police report reveals no admission by Rick that the vehicle was his. Sue had left the vehicle in his driveway after they had separated. After it was stolen from his driveway, Rick filed a police report. Rick's filing a police report on his wife's behalf is not necessarily indicative of his acceptance of the debts associated with the vehicle. Therefore, we find this assertion to be unconvincing and conclusive of no issues of fact.
 {¶ 18} Further, Bobb asserts that Sue made the lease payments for the car from a joint checking account, thereby demonstrating Rick's ratification. It is true that ratification by the principal can be demonstrated by the failure to repudiate the transaction under circumstances where the principal would naturally be expected to assert his position. Developers Three,
supra. However, in the present case, Rick averred that Sue handled the family finances and paid all of the bills. He averred she told him when she arrived home with the vehicle that he should not worry about the expensive payments because it was her car, she had a job, and she would pay for it, referring to money she earned and put into their joint checking account. He also stated that, when he found out about the lease payment amount when they were separating, Sue told him that it was her car, and she would pay for it. Further, even if the monies to pay for the car were coming out of the joint checking account, such does not demonstrate that Rick knew the lease and loan were in his name. Therefore, construing this evidence and testimony in favor of Rick, we find there remains a genuine issue of material fact on this point.
 {¶ 19} Bobb also points out that Rick drove the vehicle and enjoyed its benefits, which again raises the issue of agency by ratification. Ratification by the principal can be demonstrated by the retention of the benefits of the transaction. DevelopersThree, supra. However, as explained above, the principal ratifies the unauthorized act of the agent only if the principal, with full knowledge of the facts of the transaction, conducts himself in a way that manifests the intention to approve an earlier act performed by the agent. Bailey, at 185. In the present case, there is an issue of material fact as to whether Rick had full knowledge of the facts of the transaction. Rick claims he did not know Sue signed his name to the lease or other loan documents. Without such full knowledge of the underlying transaction, he could not manifest an intention to approve Sue's acts. There is also an issue of fact as to how much Rick drove the Suburban or enjoyed its benefits. Rick averred he almost exclusively drove his van, and Sue clearly intended the Suburban to be her car. Thus, there remain issues of material fact on this issue, and it is inappropriate for determination by summary judgment.
 {¶ 20} As there are genuine issues of material fact as to all of the grounds for summary judgment relied upon by Bobb, Rick's assignment of error is sustained. Further, as we are reversing the trial court's judgment based solely upon the arguments in Rick and Bobb's briefs, Bobb's motion to strike Sue's brief is denied as moot.
 {¶ 21} Accordingly, Bobb's motion to strike is denied as moot, and Rick's assignment of error is sustained. The judgment of the Franklin County Court of Common Pleas is reversed, and this matter is remanded to that court for further proceedings in accordance with law, consistent with this opinion.
Judgment reversed and cause remanded.
Bryant and Watson, JJ., concur.