NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0154n.06

No. 18-5575

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Mar 28, 2019
DEBORAH S. HUNT, Clerk

EQT PRODUCTION COMPANY,                    )
                                           )
                                           )
        Plaintiff-Appellant,               )
                                           )      ON APPEAL FROM THE
                                           )      UNITED STATES DISTRICT
v.                                         )      COURT FOR THE EASTERN
                                           )      DISTRICT OF KENTUCKY
DALE PHILLIPS et al.,                      )
                                           )
        Defendant-Appellee.                )

BEFORE: MERRITT, GIBBONS, and NALBANDIAN, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** This legal malpractice case arises from title

opinions that attorney Dale Phillips ("Phillips") provided to EQT Production Company ("EQT")

regarding EQT's rights and ownership in certain oil interests in southeastern Kentucky. In 2001,

EQT sold or leased some of the land for which Phillips conducted title opinions to Journey

Acquisition-II, L.P. ("Journey"). Both parties continued to operate oil and gas exploration

activities in Kentucky. Journey later alleged that EQT was operating on land it had conveyed to

Journey in the 2001 contract. After Journey filed suit against EQT in federal district court, EQT

was ordered to convey the properties in question and pay approximately $14 million in damages.

The Sixth Circuit Court of Appeals upheld the district court's opinion and order.

While the appeal was pending, EQT filed a separate legal malpractice suit against Phillips,

alleging that he was responsible for these damages because he provided faulty title opinions.

Phillips filed a motion for summary judgment, which the district court granted. The district court

determined that EQT was required to present expert testimony to establish the standard of care and breach of that standard, but that EQT failed to present a sufficient expert report, and thus failed to show there was a genuine issue of material fact as to whether Phillips breached.

EQT now appeals the district court's grant of summary judgment and dismissal of EQT's legal malpractice claim against Phillips. Because this legal malpractice case involves a complex, specialized area of law, we agree with the district court's determination that EQT's claim requires an expert witness. Because the district court did not abuse its discretion in ruling that EQT's cursory expert report did not comply with Federal Rule of Civil Procedure 26(a), and because EQT failed to demonstrate a genuine issue of material fact with respect to breach, we affirm the district court's grant of summary judgment.

I.

EQT is an oil and natural gas exploration company and is the largest producer of natural gas in the United States. In 2001, EQT decided to sell certain oil and gas interests on thousands of noncontiguous acres covering portions of fourteen oil fields throughout southeastern Kentucky—primarily in Leslie, Letcher, and Perry Counties. Journey was the high bidder for the properties. The Journey-EQT transaction included both an Oil & Gas Lease, by which EQT leased properties in fee simple to Journey, and a Master Assignment, by which EQT assigned a portion of its rights in certain third-party leases to Journey. In subsequent years, both EQT and Journey continued oil and gas exploration and drilling in southeastern Kentucky.

From 2003 to 2009, EQT hired Phillips to perform title examinations prior to drilling particular wells. EQT did not provide Phillips with "any conveyance documents or assignments," including any information about the 2001 Journey-EQT transaction. DE 70-6, Phillips Dep., Page ID 1417, 1451–52. According to Phillips, his job was limited to assessing whether EQT had good

title when it first acquired the property in question, not "the quality of their title from the time they got to it to today." *Id.* at 1422. In other words, he looked at the oil and gas ownership estate— "what [EQT] got from their lessor." *Id.* at 1423–35. He did not look at the lessee title for the working interest estate—whether EQT had leased, assigned, or sold its interest since that time. But according to EQT, Phillips represented that he searched the applicable public records through the date on which he sent EQT the title opinions. In the following years, EQT drilled wells on the properties covered by Phillips's title opinions. In 2011, Journey expressed concern to EQT that EQT had wrongfully drilled and was operating wells on portions of land EQT had conveyed to Journey.

In June 2012, Journey filed suit in the Eastern District of Kentucky against EQT seeking a declaration that it held the oil and gas working leasehold for the disputed property and alleging that EQT willfully and in bad faith trespassed by drilling and operating on Journey's property. *See Journey Acquisition-II, L.P. v. EQT Prod. Co.*, 39 F. Supp. 3d 877, 885 (E.D. Ky. 2014). The district court granted Journey's summary judgment motion in part, finding that the agreements unambiguously conveyed to Journey the disputed property. *Id.* at 896. However, because a genuine issue of material fact remained as to Journey's claim of trespass against EQT, the district court denied Journey's motion with respect to its trespass claim and sent the issue to a jury. *Id.* at 906. The jury found that EQT had trespassed in bad faith and decided in favor of Journey. After trial, the district court entered a final judgment awarding $14,288,432 to Journey. *Journey Acquisition-II, L.P. v. EQT Prod. Co.*, No. CV 12-108-GFVT, 2015 WL 4985728, at *5 (E.D. Ky. Aug. 5, 2015). On appeal, the Sixth Circuit affirmed the decision. *Journey Acquisition–II, L.P. v. EQT Prod. Co.*, 830 F.3d 444, 448–49 (6th Cir. 2016).

While the appeal was pending, EQT filed two separate legal malpractice claims against Philips, as well as other attorneys ("Vorys Defendants") who advised EQT on the negotiation and drafting of the Journey-EQT transaction documents.[1] The two cases were consolidated. The district court considered each element of a legal malpractice claim under Kentucky law: duty, breach, and causation.

As to Phillips, the main issue before the district court was whether he had breached the duty he owed to EQT. EQT claimed that Phillips breached that duty because, in performing the title opinions, he examined only the oil and gas ownership estate and failed to search and certify the lessee title for the working interest estate. In other words, EQT contended, Phillips assessed only the title EQT had originally received from its lessor, not whether EQT had since leased or otherwise conveyed the property up to the date of the title opinion. In a motion for summary judgment, Phillips alleged that EQT failed to demonstrate a genuine issue of material fact because EQT did not proffer sufficient expert testimony to establish breach. The district court held in favor of Phillips on two main grounds.

First, based on an analysis of Kentucky case law, the district court determined that expert testimony was required to establish breach because analyzing the alleged negligence involved a complex assessment of the extent and completeness of the title examination. The district court found that the key question for analyzing the alleged negligence was: "Would a reasonably competent attorney, who is asked to provide an oil and gas title opinion, breach the standard of care by failing to examine the lessee title for the working interest estate?" DE 81, Op. and Order,

---

[1] The Vorys Defendants filed a motion for summary judgment challenging EQT's evidence as to duty, breach, and causation. The district court found that EQT alleged sufficient evidence to create a genuine dispute of material fact as to each of these elements and denied the Vorys Defendants' motion for summary judgment. The Vorys Defendants were terminated from the appeal on June 19, 2018, so this opinion analyzes the procedural history and appellate claims regarding Phillips.

Page ID 3687. Because this question would puzzle the average layperson, and would likely equally confuse a lawyer (even one well-versed in mineral rights), the district court reasoned that expert testimony was required.

Second, the district court found that EQT's proffered expert report fell "far short" of the requirements of Federal Rule of Civil Procedure 26(a). *Id.* at 3691. Rule 26 requires that an expert report contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). EQT's expert, James Kaiser, had also performed title examinations for EQT in the past. According to the district court, Kaiser's report was simply a description of what his own law firm would do when conducting title opinions for one client— EQT. The district court found that the report failed to establish what Phillips *should* have done. Therefore, the court found that EQT's expert report failed to provide an opinion that Phillips breached. The court disregarded EQT's expert opinion on the issue of whether Phillips breached and found that the deficiencies could not be cured at trial.

Because Kaiser's expert report was the only evidence EQT proffered as to standard of care and breach, the district court concluded that EQT did not present sufficient evidence to demonstrate a genuine issue of material fact regarding whether Phillips breached the duty of care. EQT timely appealed the district court's grant of summary judgment.

II.

Our standard of review here is layered. As a whole, we review a district court's grant of summary judgment *de novo*, using the same standard employed by the district court. *Brainard v. Am. Skandia Life Assurance Corp.*, 432 F.3d 655, 660 (6th Cir. 2005). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *El Camino Res. Ltd. v. Huntington Nat'l Bank*, 712 F.3d 917, 922

(6th Cir. 2013) (citing Fed. R. Civ. P. 56(c)). When deciding a motion for summary judgment, we draw all reasonable inferences in favor of the non-moving party and consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." *Tysinger v. Police Dep't of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006) (citing Fed. R. Civ. P. 56(c)). The moving party is entitled to summary judgment when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Therefore, the key question "is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Sommer v. Davis*, 317 F.3d 686, 690 (6th Cir. 2003) (internal quotation marks omitted).

The district court's determination that Kentucky law requires expert testimony to establish standard of care and breach is reviewed *de novo*. *See Brainard*, 432 F.3d at 660 (finding that a district court's interpretation of state law is reviewed *de novo*). The court's decision that EQT's expert report failed to comply with the requirements of Federal Rule of Civil Procedure 26(a), meanwhile, is reviewed for an abuse of discretion. *See R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 270–71 (6th Cir. 2010) (explaining that a district court's application of the Federal Rules of Civil Procedure is reviewed for an abuse of discretion).

III.

EQT argues that (1) the district court erred in finding that expert testimony was required to establish breach; (2) if expert testimony was required, the district court erred in finding that EQT did not provide sufficient expert testimony; and (3) EQT put forth evidence to create a genuine

issue of material fact. EQT therefore contends that the district court should not have dismissed the case against Phillips and that this court should reverse the district court's ruling.

In a diversity action, a federal court applies the substantive law of the state in which it sits. *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 566 (6th Cir. 2001). This court applies Kentucky substantive law and federal procedural law. *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009) ("Under the *Erie* doctrine, federal courts sitting in diversity apply the substantive law of the forum state and federal procedural law.") (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)). When applying Kentucky law, this court "must follow the decisions of the state's highest court when that court has addressed the relevant issue." *Talley v. State Farm Fire & Cas. Co.*, 223 F.3d 323, 325 (6th Cir. 2000).

Under Kentucky law, a plaintiff must prove the following elements to prevail on a claim of legal malpractice: "[(]1) that there was an employment relationship with the defendant/attorney; [(]2) that the attorney neglected his duty to exercise the ordinary care of a reasonably competent attorney acting in the same or similar circumstances; and (3) that the attorney's negligence was the proximate cause of damage to the client." *Marrs v. Kelly*, 95 S.W.3d 856, 860 (Ky. 2003). There is no dispute as to the employment relationship here, so the remaining issues are duty, breach, and causation.

The district court granted summary judgment on the ground that EQT failed to put forth sufficient expert testimony to establish a genuine issue of material fact as to breach. As the moving party, Phillips shoulders the burden of showing the absence of a genuine dispute of material fact as to at least one element of EQT's legal malpractice claim. Fed. R. Civ. P. 56(c); *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008). Assuming Phillips satisfies this burden, EQT then must put forth "specific facts that reveal a genuine issue for trial," through "depositions,

answers to interrogatories, affidavits, and admissions." *Laster v. City of Kalamazoo*, 746 F. 3d 714, 726 (6th Cir. 2014) (citing *Celotex Corp.*, 477 U.S. at 324). Therefore, whether summary judgment was proper turns on whether EQT established a genuine issue of material fact as to whether Phillips breached.

In considering whether summary judgment was proper, the court must view the evidence in the light most favorable to EQT, the non-movant. *Laster*, 746 F. 3d at 726; *Hayes*, 266 F.3d at 566. Viewing the evidence in the light most favorable to EQT, we conclude that summary judgment was proper because expert testimony was required as to standard of care and breach thereof and because EQT's proffered expert report was rudimentary and did not comply with Rule 26.

A.

The crux of the parties' dispute is whether expert testimony is required to establish that Phillips breached or adhered to his duties. The parties disagree as to how to frame the key issue. EQT contends that Phillips certified that he had performed title examinations through the date he provided the title opinion, when he had not in fact done so. Therefore, EQT argues the issue in this case is simple: "whether an attorney breaches his duties when he represents that he did something that he in fact did not do[.]" CA6 R. 15, Appellant Br., Page ID 19. This question is so straightforward, according to EQT, that an average layperson could understand it, so expert testimony is not required. In contrast, Phillips argues that the district court properly defined the key question as: "Would a reasonably competent attorney, who is asked to provide an oil and gas title opinion, breach the standard of care by failing to examine the lessee title for the working interest estate?" CA6 R. 18, Appellee Br., Page ID 41 (quoting DE 81, Op. and Order, Page ID 3687). We agree with the district court's framing of the question at issue here because an analysis

of the record shows that the title examinations were complex, involved multiple terms of art, and relied upon intricacies of mineral interests and estates.

B.

Under Kentucky law, expert testimony is required to prove legal malpractice except "where the negligence is so apparent that a layperson with general knowledge would have no difficulty recognizing it." *Stephens v. Denison*, 150 S.W.3d 80, 82 (Ky. Ct. App. 2004). When the alleged negligence is straightforward, expert testimony is not required. *See Greene v. Frost Brown Todd, LLC,* No. 3:14-CV-00619-TBR, 2016 WL 6877746, at *6 (W.D. Ky. Nov. 21, 2016) ("[C]ourts interpreting Kentucky law suggest that expert testimony will not be needed in cases where a statute of limitations was missed or a plea offer was not conveyed."), *aff'd sub nom. Douglas Walter Greene v. Frost Brown Todd, LLC,* No. 16-6761, 2017 WL 6210784 (6th Cir. Dec. 4, 2017). But when the alleged negligence involves the exercise of complex legal decision-making or the application of complex legal principles, expert testimony is required. *See id.* ("Kentucky courts have required expert testimony in cases concerning trial preparation, trial strategy, and motions to vacate, qualified domestic relations orders, and an attorney's professional assessment of the law.") (internal quotation marks and citations omitted).

As the district court noted, many attorneys, let alone the average layperson, would not know the answer to the question: "Would a reasonably competent attorney, who is asked to provide an oil and gas title opinion, breach the standard of care by failing to examine the lessee title for the working interest estate?" Given that the relevant inquiry is not "so apparent that a layperson with general knowledge would have no difficulty recognizing it," we conclude that expert testimony is necessary here. *See Stephens*, 150 S.W.3d at 82 (extending to Kentucky legal malpractice claims "an exception that allows medical malpractice claims to proceed without expert testimony where

9

the negligence is so apparent that a layperson with general knowledge would have no difficulty recognizing it").

This conclusion is consistent with Kentucky case law. *Huffman v. Baker* presents a fairly clear statement of Kentucky law regarding an expert testimony requirement for title opinions, although it is unpublished and not cited by either party. No. 2005-CA-002031-MR, 2006 WL 2846878 (Ky. Ct. App. Oct. 6, 2006). Huffman sued Baker for legal malpractice arising from a title opinion Baker performed in which Baker relied upon the theory of after-acquired title to certify title for Huffman's purchase of a farm. *Id.* at *1. Though Huffman presented no expert testimony at trial, the jury returned a verdict in favor of Huffman. *Id.* at *2. Baker argued that she was entitled to a directed verdict because Huffman failed to present expert testimony to support a finding that she acted negligently. *Id.* The trial court denied her motion for directed verdict and subsequent motion for judgment notwithstanding the verdict. *Id.* The Court of Appeals of Kentucky held:

> Expert testimony was required to show that Baker's reliance on the doctrine constituted a breach of her professional duty to Huffman . . . . Determining whether Baker's reliance on the theory constituted negligence was indeed a matter beyond the ken of a layperson without the assistance of expert testimony. We hold that *the absence of expert testimony was fatal to a finding of negligence* and that the court erred in failing to direct a verdict on this issue. Accordingly, we reverse on this issue as asserted in Baker's cross-appeal.

*Id.* at *4 (emphasis added). Similarly, in *Tipton v. Porter,* the Kentucky Court of Appeals held that expert testimony was necessary to prove negligence of an attorney who did not undertake a complete title examination before drafting a deed and mortgage. No. 2009-CA-001222-MR, 2010 WL 3641233, at *5 (Ky. Ct. App. Sept. 17, 2010) ("Expert testimony would be required to answer this question as this is not the sort of question that would be within the common knowledge of a

layperson."). As in *Huffman* and *Tipton*, we conclude that expert testimony is required here to prove the negligence EQT alleges.

C.

Since expert testimony is necessary here, the next question is whether the district court abused its discretion in determining that EQT's report did not comply with Rule 26(a)'s expert-report requirements. Because EQT's proffered expert report was overly cursory and subjective as to the standard of care and breach, we conclude the district court did not abuse its discretion in determining that the report did not comply with Federal Rule of Civil Procedure 26(a) and in disregarding the expert report.

1.

EQT's expert, James Kaiser, based his expert opinion on his education, thirty-plus years of examining oil and gas estates, and the materials submitted to him by counsel: depositions, correspondence between EQT and Phillips, title opinions from Phillips to EQT, and title opinions from his own firm, Wilhoit & Kaiser. The substantive content of the expert report reads in full:

**Professional Opinions and Basis for these Opinions:**

It is my professional opinion that when EQT Production Company, or their predecessor, requested an oil and gas title opinion from Wilhoit & Kaiser at any time over the last 20 (twenty) years we were requested to certify the title for certain estates, including the oil and gas estate, the oil and gas leasehold estate, the coal estate, and the surface estate. There were instances when the surface estate would not be requested but, I do not know of any instances in which EQT would not either expressly request the leasehold estate be certified, or any instances in which Wilhoit & Kaiser would not have certified the oil and gas leasehold estate in accordance with the nature and purpose of a drilling title opinion. Wilhoit & Kaiser has always certified the oil and gas leasehold estate on any opinion requested. Our basis for doing so is to provide the client with a third party assurance of what working interest they hold in the subject lease.

Based upon review of the title opinions at issue in this case and Dale Phillips' testimony, Mr. Phillips opined to and/or certified title to the oil and gas leasehold estate without performing a complete examination of that estate. Performance of such an examination would identify the transfer of the working

11

interest in a lease. One of the factors to be considered in determining if bad faith mineral trespass damages should be awarded is whether the trespasser relied upon a complete title examination.

DE 48-1, Expert Witness Report, Page ID 912.

2.

As a baseline matter, "[i]n rulings on the admissibility of expert opinion evidence[,] the trial court has broad discretion and its rulings must be sustained unless manifestly erroneous." *Brainard*, 432 F.3d at 663 (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). Rule 26 requires the disclosure of an expert's report and the required contents of that report. Of paramount importance, Rule 26(a)(2)(B)(i) requires all expert reports to contain "a complete statement of all opinions the witness will express and the basis and reasons for them." An expert opinion submitted in the context of a summary judgment motion must set forth facts, a line of reasoning based on a logical foundation, and more than a conclusory assertion about the legal issues. *Brainard*, 532 F.3d at 663–64 (internal citations omitted).

On appeal, EQT again contends that the expert report complies with Rule 26, and that the district court took an overly technical approach in deciding otherwise. EQT also argues that Kaiser should be allowed to testify at trial to cure any deficiencies in the expert report. Finally, EQT again argues that Kaiser's report is consistent with the opinion of William Davidson, a title attorney who testified about his work providing oil and gas title opinions in the underlying *Journey* litigation.

The district court clearly outlined the deficiencies in Kaiser's report and did not abuse its discretion by finding the report insufficient under Rule 26(a). As the court explained, Kaiser's report failed to comply with Rule 26 because it was overly subjective, provided "no explanation of the standard of care," and failed to "even offer a conclusory opinion that . . . Phillips . . . breached

the standard of care, let alone the 'basis and reasons' for such an opinion." DE 81, Op. and Order, Page ID 3691–92.

Federal Rule of Civil Procedure 37(c)(1) states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Because Kaiser's report did not comply with Rule 26(a), the district court did not abuse its discretion in barring EQT from using the report under Federal Rule of Civil Procedure 37(c)(1). "Federal Rule of Civil Procedure 37(c)(1) requires absolute compliance with Rule 26(a), that is, it 'mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified.'" *R.C. Olmstead, Inc.*, 606 at 271–72 (quoting *Roberts v. Galen of Virginia, Inc.,* 325 F.3d 776, 782 (6th Cir. 2003)). The potentially sanctioned party—here, EQT—bears the burden of proving harmlessness or substantial justification. *Id.* As it did below, EQT argues only that expert testimony is not required here and that its proffered expert report sufficiently establishes the standard of care and breach thereof. Therefore, we conclude that the district court did not abuse its discretion in determining that EQT failed to show that its failure to comply with Rule 26 was substantially justified or harmless.[2]

### D.

Reviewed *de novo* and in the light most favorable to non-movants EQT, Kentucky law required EQT to provide expert testimony as to the standard of care and breach. The district court did not abuse its discretion in determining that Kaiser's report failed to comply with Rule 26 and

---

[2] The opinion of EQT's purported additional expert, Davidson, does not cure this deficiency. As the district court found, EQT only disclosed one expert in accordance with the discovery deadline—Kaiser. Therefore, EQT's purported offer of Davidson's testimony does not cure EQT's lack of expert testimony.

in deciding to exclude the report under Rule 37 for failure to comply with Rule 26. Therefore, EQT failed to put forth sufficient evidence to create a genuine issue of material fact as to whether Phillips breached his duty to EQT. Accordingly, summary judgment in favor of Phillips is warranted.

IV.

For the reasons stated, we affirm the district court's grant of summary judgment in favor of Phillips.

14